# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BERRY LONG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-14-402-F** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Berry Long brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. United States District Judge Stephen Friot has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b). Having reviewed the administrative record (Doc. No. 9, hereinafter "R.__") and the arguments and authorities submitted by the parties, the undersigned recommends that the Commissioner's decision be affirmed.

## PROCEDURAL HISTORY

Plaintiff protectively filed his applications for DIB and SSI on February 2, 2011, alleging a disability onset date of March 1, 2009. R. 229-37, 256-59. Following denial

of Plaintiff's applications initially, on reconsideration, and upon informal remand, a hearing before an Administrative Law Judge ("ALJ") was held on October 1, 2012. R. 38-96, 105-08, 109-11, 136-48, 152-57.

Plaintiff had previously filed applications for DIB and SSI benefits that were denied on September 9, 2009, and never appealed. The ALJ found that good cause had not been established to reopen those prior claims, and, therefore, the September 9, 2009 decision was controlling as to Plaintiff's disability on or before that date. R. 115. Accordingly, the ALJ limited his determination of disability to the period of September 10, 2009, through the date of his decision. R. 115. The ALJ issued an unfavorable decision on November 21, 2012. R. 112-33. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-5; *see* 20 C.F.R. §§ 404.981, 416.1481. This action for judicial review followed.

ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity since March 1, 2009, the alleged onset date; however, the ALJ continued through the remainder of the sequential evaluation analysis. R. 117; *see* 20 C.F.R. §§ 404.1571, 416.971.[1] At step two, the ALJ determined that

---

[1] Plaintiff does not address the step-one finding; nor does the Commissioner argue that it

Plaintiff had the severe impairments of "degenerative disc disease, s/p fusion, with radiculopathy; herniated disc/bone spur; and hepatitis C." R. 118; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 118-19; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments. R. 119-26; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The ALJ found that Plaintiff had the RFC to perform "light work," subject to additional limitations of "no more than frequent climbing, balancing, stooping, kneeling, crouching, crawling, and reaching overhead; and is limited to no production rate for pace of work, instead work involving meeting goals due to impact from medications on concentration and/or attention." R. 119; *see* 20 C.F.R. §§ 404.1567(b) (defining "light work"), 416.967(b) (same). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work and that transferability of job skills was not material to the determination of disability. R. 126-27; *see* 20 C.F.R. §§ 404.1565, .1568, 416.965, .968.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. Taking into consideration the testimony of a vocational expert ("VE") regarding the degree of erosion to the unskilled light

would be an alternative and independent ground for affirmance.

occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform occupations such as office helper (DOT 239.567-010), gate guard (DOT 372.667-030), and security guard (DOT 372.667-031), all of which offer jobs that exist in significant numbers in the national economy.  R. 127; *see* 20 C.F.R. §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii).  On that basis, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 10, 2009, though the date of the decision.  R. 128; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied.  *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted).  The court "meticulously examine[s] the record as a whole, including [any evidence] that may undercut or detract from the ALJ's findings . . . to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence

in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

On appeal, Plaintiff lists four primary claims of error: (1) the ALJ failed to properly weigh the medical evidence; (2) the ALJ failed to properly assess Plaintiff's RFC; (3) the ALJ erred in finding Plaintiff could perform other work; and (4) the ALJ failed to properly evaluate Plaintiff's credibility. Pl.'s Br., Doc. No. 11, at 1.

A. *Failure to Properly Evaluate Plaintiff's Credibility*

The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the individual's statements about [a medically determinable impairment's] symptom(s) and its functional effects." SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted). The ALJ's credibility determination meets these standards.

Though Plaintiff acknowledges that the ALJ gave several reasons for finding that Plaintiff was not credible, Plaintiff contends that such reasons "were mere conclusion, did not apply the correct legal standards, and were not based on substantial evidence." Pl.'s Br. at 11. This argument implicates the framework for the proper analysis of a claimant's

evidence of pain and other subjective symptoms, as set forth in *Luna v. Bowen*, 834 F.2d 161, 163-66 (10th Cir. 1987), and more recently summarized in *Wilson v. Astrue*, 602 F.3d 1136, 1144-45 (10th Cir. 2010).

In his RFC finding, the ALJ acknowledged that whenever Plaintiff's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record." R. 119-20. The ALJ proceeded to summarize the medical evidence, the nonmedical evidence, and Plaintiff's hearing testimony. R. 120-26. The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the RFC assessment. R. 120. The ALJ then detailed his reasoning. R. 125-26.

1. Activities of Daily Living

The ALJ's first stated basis for his credibility decision was Plaintiff's activities of daily living, which is a relevant factor for consideration. *See* R. 125; 20 C.F.R. §§ 404.1529(c)(3)(i) (prescribing that when evaluating the intensity and persistence of a claimant's symptoms such as pain, relevant factors include daily activities), 416.929(c)(3)(i) (same). Explaining that Plaintiff "has described daily activities that are not totally limited and that are consistent with the [RFC]," the ALJ detailed the various reported activities found in the record. R. 125 (citing Exs. 2E, 5E, 9E, 2F, 5F; hearing

testimony). The ALJ further explained that the record reflects work activity after the alleged onset date, "which indicates that [Plaintiff's] daily activities have, at least at times, been somewhat greater than [Plaintiff] has generally reported." R. 125 (citing Exs. 3D, 6D; hearing testimony).

Plaintiff argues that the ALJ "failed to indicate how any of the daily activities indicated that Plaintiff could work on a sustained, forty-hour basis," and that the ALJ "should have found Plaintiff's unsuccessful attempt to work actually bolstered his credibility about the effects his impairments had on his ability to perform job tasks on the 'regular and continuing' basis [Social Security] Ruling 96-8p requires." Pl.'s Br. at 11, 12-13; *see also* Pl.'s Reply, Doc. No. 13, at 7. These arguments, however, are unpersuasive. The ALJ relied on Plaintiff's reported daily activities, including work after his alleged onset date, to determine that Plaintiff had "described daily activities that are not totally limited," and, therefore, were at odds with his claims of *disabling* pain.[2] *See* R. 125. The ALJ properly reviewed Plaintiff's daily activities in his assessment of Plaintiff's credibility. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Wilson*, 602 F.3d at 1146 (upholding ALJ's determination that claimant's testimony of disabling pain was not credible where ALJ had relied on evidence of plaintiff's daily activities that did not indicate significant limitations).

---

[2] Plaintiff repeatedly argues that the ALJ erred in relying upon Plaintiff's "unsuccessful work attempt." Pl.'s Br. at 12-13; Reply at 4-6. The ALJ, however, relied upon Plaintiff's work activities simply as evidence that Plaintiff had "described daily activities that are not totally limited." *See* R. 125. Plaintiff's arguments that the ALJ relied upon Plaintiff's work efforts after his alleged onset date for any other purposes are meritless.

## 2. Relief from Treatments and Medications

The ALJ next referenced Plaintiff's treatments and medications, which "the record . . . reveals . . . have been generally successful/relatively effective in controlling [the allegedly disabling] symptoms," which is also a relevant factor for consideration. R. 125; *see* 20 C.F.R. §§ 404.1529(c)(iv)-(v) (prescribing that when evaluating the intensity and persistence of a claimant's symptoms such as pain, relevant factors include medication and treatment); 416.929(c)(iv)-(v) (same). The ALJ noted the records from Plaintiff's treating pain management physician, which "document a 40-80% improvement in pain with treatment and medications." R. 125 (citing Exs. 2F and 5F).

Plaintiff argues that the ALJ erred by stating that prescribed medications "improved" Plaintiff's pain when the records actually reflected that Plaintiff "had 40 to 60 per cent effective relief (not 'improvement')." Pl.'s Br. at 13. The undersigned finds no error in the ALJ's imprecise description of relief from pain as improvement. In various other portions of his decision, the ALJ described the treatment and medication as "effective in controlling [Plaintiff's] pain," thus indicating that he was using the two phrases interchangeably. *See* R. 119, 121, 122. Moreover, the ALJ's point was that treatment and medication lessened Plaintiff's pain, which—regardless of the phrasing used—is a relevant factor whose presence is supported by substantial evidence in the record.

## 3. Conclusory Statements/Plaintiff's Demeanor

Plaintiff further alleges that the ALJ in his credibility analysis "relied on vague conclusions," in contradiction to the requirement set forth in Social Security Ruling 96-

7p that an ALJ provide specific reasons that are "grounded in the evidence." Pl.'s Br. at 13; *see* SSR 96-7p, 1996 WL 374186, at *4. Plaintiff argues that the ALJ stated that Plaintiff's "description of symptoms and limitations" was "generally inconsistent and unpersuasive, but failed to identify those inconsistencies with any reference to the record or explain why they are not persuasive. Pl.'s Br. at 13; *see also* Pl.'s Reply at 9.

To the contrary, the ALJ did identify these inconsistencies and provide references to the record:

> The undersigned notes that there are inconsistent reports regarding driving, sleeping, and [activities of daily living] from what the claimant has notated on questionnaires and/or reported to DDS employees (Exhibits 2E, 5E, and 9E), and what he tells doctors (Exhibits 2F and 5F). Furthermore, at the hearing, the claimant testified to drinking significantly less alcohol than is reflected in Exhibit 11F. The undersigned also notes that the claimant was arrested for public intoxication in June of 2012.

R. 126; *see also* R. 64 (hearing testimony regarding June 2012 arrest). These were reasonable factors to consider in assessing Plaintiff's overall credibility and, as such, provide substantial evidence for the ALJ's determination. *See* 20 C.F.R. §§ 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence."), 416.929(c)(4) (same); *Wilson*, 602 F.3d at 1146 (finding that ALJ properly considered claimant's misrepresentations as to her use of alcohol when assessing her overall credibility). While the ALJ could have been more precise regarding which aspects of Plaintiff's testimony he did not find credible, the undersigned finds that the ALJ's discussion was adequate under Social Security Ruling 96-7p and provided specific reasons that were supported by evidence of record.

Plaintiff's allegation regarding the ALJ's "vague conclusions" also includes the contention that the ALJ did not state specifically what it was about Plaintiff's demeanor that caused the ALJ to find him not credible.  Pl.'s Br. at 13; Pl.'s Reply at 8-9.  But the ALJ emphasized that Plaintiff's demeanor was only one factor in the credibility determination.  R. 126 (stating that "[a]nother factor influencing the conclusions reached in this decision is the claimant's generally unpersuasive appearance and demeanor while testifying at the hearing," but further stating that "[i]t is emphasized that this observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity").  Consideration of a claimant's demeanor as part of the overall evaluation of the claimant's creditability is proper.  *Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000) ("Although an ALJ may not rely solely on his personal observations to discredit a plaintiff's allegations, he may consider his personal observations in his overall evaluation of the claimant's credibility"); SSR 96-7p, 1996 WL 374186, at *5 ("[T]he adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements.").  Based on the ALJ's acknowledgment that Plaintiff's demeanor was only part of the overall credibility assessment, and in view of the other evidence supporting the ALJ's adverse credibility finding, the ALJ's failure to provide greater detail on this point was not erroneous.

4.  Indigent Status

Plaintiff also contends that the ALJ improperly relied upon gaps in Plaintiff's treatment history as proof of a lack of pain or need for treatment, when instead those gaps

were the result of a lack of financial resources.  *See* Pl.'s Br. at 13; Pl.'s Reply at 7-8.  In

his decision, the ALJ stated:

> Furthermore, the record also reflects gaps in the claimant's history of treatment.  The undersigned notes that the claimant is alleging disability as of March 1, 2009; however, there are no medical records in the file until April of 2010, one year later (Exhibit 2F).  Furthermore, the claimant has not received treatment from any specialist since June of 2011; a general practitioner has rendered all treatment since that time.  The undersigned also notes that, despite the complaints of allegedly disabling symptoms, there have been periods since the alleged onset date during which the claimant has not taken any medications for those symptoms; one conclusion that may be drawn is that his symptoms were not sufficiently troublesome to him to warrant taking medication during such time periods (Exhibits 7F and 11F).  Furthermore, at the hearing, the claimant testified to only taking over the counter medications, which suggests that these medications (and not prescription medications) were sufficient to address his symptoms.  The undersigned also notes that, throughout the record and at the hearing, the claimant stated that he could not afford treatment or medications; however, there is record evidence, including testimony at the hearing, that the claimant smokes and drinks quite a bit.  If the claimant is able to afford to purchase large quantities of cigarettes and alcohol, he could certainly afford to obtain medical care in lieu of using his funds for other purposes.

R. 125-26.

An ALJ is entitled to consider what attempts a plaintiff makes to relieve his pain

in an effort to evaluate the truthfulness of a plaintiff's contention that his pain was so

severe as to be disabling.  *Qualls*, 206 F.3d at 1372.  In making such evaluation, however,

the ALJ "must not draw any inferences about an individual's symptoms and their

functional effects from a failure to seek or pursue regular medical treatment without first

considering any explanations that the individual may provide, or other information in the

case record, that may explain infrequent or irregular medical visits or failure to seek

medical treatment."   SSR 96-7p, 1996 WL 374186, at *7-8.   An inability to afford

treatment is specifically recognized as a legitimate reason for failing to seek treatment. *Id.* at *8. The Tenth Circuit has recently explained that "the ALJ is ordinarily required to address such financial considerations before drawing adverse inferences from the claimant's failure to seek or pursue treatment." *Alarid v. Colvin*, 590 F. App'x 789, 793 (10th Cir. 2014); *see also Madron v. Astrue*, 311 F. App'x 170, 178-79 (10th Cir. 2009) (finding that plaintiff's failure to follow prescribed medical treatment was not substantial evidence supporting ALJ's adverse credibility determination when record indicated plaintiff could not afford the treatment and ALJ did not properly consider such inability to afford such treatment).

Here the ALJ purported to address Plaintiff's financial situation, but the undersigned finds that such consideration was done improperly. The record adequately demonstrates that Plaintiff had financial difficulties that affected his ability to afford treatment and medication during the relevant disability period. *See* R. 349, 442 (4/9/10 record from Hemant Shah, MD, "[D]oes not have insurance and can not [sic] afford to have any procedure or investigation."); 353, 446 (4/9/10 record from Dr. Shah, "I advised to get MRI of Lumbar spine. He says, he does not have insurance and he will try to collect some money to get MRI as soon as possible."); 440 (4/22/10 record from Dr. Shah, same); 424 (10/18/10 record from Dr. Shah, "I provided option for cervical ESI but in view of no insurance, he can not [sic] afford the same."); 418 (11/16/10 record from Dr. Shah, same); 347, 412 (12/23/10 record from Dr. Shah, same); 402 (2/8/11 record from Dr. Shah, "He was last seen in December and ran out of medication. In view of self-pay he could not afford to continue treatment. [H]e started to have intense pain and

in view of the same, he made an appointment for evaluation."); 406 (2/8/11 record from Dr. Shah, "I provided option for cervical ESI but in view of no insurance, he can not [sic] afford the same."); 341, 400 (3/7/11 record from Dr. Shah, same); 394 (4/7/11 record from Dr. Shah, same); 386 (4/21/11 record from Dr. Shah, same); 380 (5/23/11 record from Dr. Shah, same); 370 (6/21/11 record from Dr. Shah, "He says, he does have enough money to get MRI done now."); 374 (6/21/11 record from Dr. Shah, "I provided option for cervical ESI but in view of no insurance, he can not [sic] afford the same."); 455 (1/13/12 record from Douglas Witter, MD, "He used to go to a pain management doctor in Florida . . . . States cannot go to Florida now due to cost."); 449 (8/2/12 record from Dr. Witter, "He states that he has three herniated cervical disks and he cannot afford to get surgery done. We discussed all this in detail."); 466 (9/28/12 record from Lily Rocha, MD, "His blood pressure is uncontrolled today because he cannot afford his medication."); *see also* R. 151 (6/27/11 letter from Plaintiff's counsel requesting the SSA to expedite Plaintiff's claim because he is "currently homeless" and a decision establishing his disability would "give him . . . some income"); R. 203 (8/5/12 notice to SSA that Plaintiff is homeless); R. 46, 48, 49, 59, 60, 83 (Plaintiff's hearing testimony describing being homeless and his financial situation). The ALJ acknowledged, to some extent, Plaintiff's lack of financial resources but disregarded it in light of Plaintiff's purchases of cigarettes and alcohol. R. 125-26.

In *Madron*, the Tenth Circuit criticized an ALJ's reference to the cost of cigarettes as meaning a claimant could afford treatment when the ALJ had not analyzed whether the expenses were comparable. *See Madron*, 311 F. App'x at 178-79, 179 n.7. Following

that logic, and given the substantial medical expenses indicated from the records cited above, the undersigned cannot "accept the reasoning of the ALJ that [Plaintiff's] stated inability to afford the recommended [treatment] is questionable and reflects adversely on [his] credibility because of [his] continued purchase of cigarettes" and alcohol when the record does not include any evidence or analysis of "*comparable* costs of the medical services needed and the amount of cigarettes [and alcohol] purchased." *Id.*; *see* R. 125-26.

Because the ALJ did not properly consider Plaintiff's financial situation prior to drawing an adverse inference from Plaintiff's gaps in treatment or periods in which Plaintiff did not take prescription medication, the ALJ's reliance on such gaps does not qualify as substantial evidence to support his adverse credibility determination. *See id.*; *Urioste v. Colvin*, No. 13-CV-2855-MJW, 2014 WL 5465074, at *4 (D. Colo. Oct. 28, 2014) ("An inability to pay must be taken into consideration if there is evidence a claimant sought to obtain any low-cost medical treatment or that he has been denied medical care because of his financial condition. If an ALJ fails to make this inquiry, the lack of medical treatment cannot constitute 'substantial evidence' to support the ALJ's credibility determination." (citation omitted)); *cf. Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (finding that substantial evidence did not support the ALJ's determination that claimant was not credible due to her failure to seek treatment when ALJ "did not consider whether [claimant's] stated reason for discontinuing the medication justified her action").

The resulting question is whether this unsupported finding undermines the ALJ's credibility analysis to the point that it renders the ALJ's conclusion unsupported by substantial evidence. In *Quiver v. Colvin*, this Court agreed with a claimant that an ALJ had not properly considered inability to afford treatment before relying on a gap in medical treatment for his adverse credibility determination. See *Quiver*, No. CIV-13-41-F, 2014 WL 769159, at *5 (W.D. Okla. Feb. 26, 2014). However, the Court determined that the unsupported finding did not require reversal, explaining that "in contrast to the facts in *Thompson*, 987 F.2d at 1490, where little was 'left as "substantial evidence" for the ALJ's determination of noncredibility,' this single unsupported finding by the ALJ as to [claimant's] lack of medical treatment does not undermine the ALJ's otherwise supportable credibility findings." *Id.*

Here, the ALJ based his credibility assessment on the medical evidence, medical opinions, activities of daily living that were inconsistent with the alleged symptoms, a consistency of symptoms between the alleged disability period and at a time that Plaintiff was working,[3] a lack of prescribed limitations by medical personnel who treated Plaintiff,

---

[3] Although not addressed in his opening brief, Plaintiff does allege in his Reply that the ALJ's statement regarding the consistency of Plaintiff's symptoms was "an unsupported conclusion." Pl.'s Reply at 5 (citing R. 126); *see* Pl.'s Br. at 11-14. Careful review of the ALJ's discussion, however, indicates that the ALJ's citation to Exhibits 9E, 2F, 5F, and 9F, was intended to support not only the sentence immediately preceding the cite, but all three of the preceding sentences. *See* R. 126. Furthermore, even a cursory review of cited Exhibits 2F and 5F reveals multiple records from Dr. Shah indicating that Plaintiff's symptoms were constant. *E.g.*, R. 349, 442 (4/9/10 record from Dr. Shah, "In view of persistent pain, he was referred for evaluation and management. . . . The pain started greater than 10 years ago. The symptoms are constant."); R. 337 (3/7/11 record from Dr. Shah, "He denies any new symptoms. . . . The pain started greater than 10 years ago. The

and inconsistent statements by Plaintiff regarding his activities and symptoms.  R. 125-26.  As in *Quiver*, these findings by the ALJ amply support the ALJ's determination that Plaintiff was only partially credible and the "single unsupported finding by the ALJ as to [Plaintiff's] lack of medical treatment does not undermine the ALJ's otherwise supportable credibility findings." *Quiver*, 2014 WL 769159, at \*5.  Because the ALJ's credibility decision is supported by substantial evidence independently of his reliance upon gaps in Plaintiff's treatment and prescription medications, reversal is not required on this basis.

### 5. Conclusion

Read in the context of the entire decision, substantial evidence supports the ALJ's determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible.

### B. *Failure to Properly Weigh the Medical Evidence*

Plaintiff contends that the ALJ improperly weighed and rejected the opinion of an examining physician in favor of that of a consultative examiner in determining his RFC.  Pl.'s Br. at 2-6; Pl.'s Reply at 1-3.  The undersigned disagrees.  An ALJ is required to weigh every medical opinion he receives and to explain the weight given to that opinion.  *See* 20 C.F.R. §§ 404.1527(c), (e)(2)(ii), 416.927(c), (e)(2)(ii); *Keyes-Zachary,* 695 F.3d at 1161.  The ALJ has done so here.

---

symptoms are constant."); R. 370 (6/21/11 record from Dr. Shah, same).

Plaintiff's arguments focus on two medical opinions, neither from a treating source. *See* Pl.'s Br. at 2-6. The first, provided by Lily Rocha, MD, an examining physician hired by Plaintiff's counsel, diagnosed Plaintiff with generalized and diffuse spinal arthritic damage, degenerative disc disease, bone spurs, and uncontrolled hypertension. R. 467; *see also* R. 124. Dr. Rocha also completed a Physical RFC in which she stated that Plaintiff had multiple functional limitations. R. 460-64; *see also* R. 124. The ALJ gave Dr. Rocha's opinion partial weight. R. 124. Plaintiff argues that "[t]he ALJ failed to provide any legally valid reasons for giving Dr. Rocha's opinions lesser weight." Pl.'s Br. at 6.[4]

The second opinion at issue is that of state agency consultant Sunita Patel, MD. Plaintiff's initial denial was determined by state agency consultant Stephanie Adams, a nonphysician "single decision-maker" ("SDM").[5] R. 97-106, 136-48, 282-85. Ms.

---

[4] Plaintiff also argues that, because the ALJ "failed to designate to what parts of her opinion he gave 'partial' (or essentially any) weight," the ALJ's "vague statement of giving only 'partial weight' to her opinion fails to support his decision with substantial evidence." Pl.'s Br. at 3, 6; *see also* Pl.'s Reply at 1. The undersigned finds that the ALJ intended to give partial (or discounted) weight to all of Dr. Rocha's opinion, a decision that is supported by substantial evidence. *See* discussion *supra*; *cf. DeFalco-Miller v. Colvin*, 520 F. App'x 741, 745 (10th Cir. 2013) (rejecting plaintiff's argument that the ALJ relied on part of the RFC form while rejecting remainder and finding that the ALJ gave discounted weight to the entire form).

[5] Plaintiff's SSA applications were filed in Florida, where Plaintiff was living at the time. *See* R. 41. Though Oklahoma does not employ the use of SDMs, Florida does. Florida is one of ten states participating in the SSA's single decisionmaker model, under which a trained individual may make initial disability determinations without generally requiring a medical consultant to sign the disability determination forms that the SSA uses to certify the determination. *See* Testing Modifications to the Disability Determination Procedures; Test Sites for Single Decisionmaker Model, 62 Fed. Reg. 38182 (July 16,

Adams' findings and determination were later affirmed by Dr. Patel. R. 107-08, 448. As to Dr. Rocha, Plaintiff first contends that the ALJ erred in discounting Dr. Rocha's opinion due to "the context in which [it] was produced" and cites a Tenth Circuit opinion for the proposition that an "ALJ may not automatically reject the [physician's] opinion for th[e] reason alone [that it was solicited by counsel.]" Pl.'s Br. at 3-4 (citing *Hinton v. Massanari*, 13 F. App'x 819, 823-824 (10th Cir. 2001) (alterations in Plaintiff's quotation)). Plaintiff is correct so far as the quoted statement goes; however, in that case, the Tenth Circuit also stated that "[a]n ALJ may certainly question a doctor's credibility when the opinion, as here, was solicited by counsel." *Hinton*, 13 F. App'x at 823, 824. In this case, the ALJ did not discount Dr. Rocha's opinion *solely* because it was solicited by Plaintiff's counsel; rather, that was only one of several reasons cited by the ALJ. *See* R. 124-25. This claim of error is unpersuasive.

The ALJ found that, because Dr. Rocha's examination did not take place until September 2012, she did not have a basis for opining on Plaintiff's functioning in March 2009. *See* Pl.'s Br. at 4; R. 118, 125. The ALJ also observed that Dr. Rocha did not review Dr. Shah's treatment notes, which showed that Plaintiff's symptoms improved with treatment, but reviewed only the results from Plaintiff's MRIs. R. 118-19, 125; *see also* R. 467. The ALJ further found that Dr. Rocha's findings were inconsistent with Plaintiff's documented activities of daily living and with his documented work activity after the alleged onset of disability. R. 119. Accordingly, as the ALJ noted that "some of

---

1997). Within the Tenth Circuit, Kansas also participates in this program. *See id.*

Dr. Rocha's opinion is based on information obtained from [Plaintiff] and not by a total review of the medical evidence of record," the ALJ questioned the credibility of the "information that [Plaintiff] may have reported to Dr. Rocha and upon which she may have based her findings, particularly given the context of [Plaintiff's] visit to Dr. Rocha." R. 125, 119. Hence, the ALJ reasonably discounted Dr. Rocha's opinion and, having given explicit, legitimate reasons for doing so, the ALJ did not err in this regard. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4) (ALJ must consider support and consistency for opinion), 416.927(c)(3)-(4) (same); *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2008) (finding ALJ reasonably discounted nontreating physician's opinion when physician did not have a treating relationship with the claimant, his opinion was based on a single, subjective report by the claimant, and his opinion was not supported by the evidence of record).

Plaintiff's next argument references the second medical opinion at issue as Plaintiff contends that the ALJ erred in "fail[ing] to explain how he weighed Dr. Rocha's opinion as from an examining physician . . . against Dr. Patel's conclusory affirmation of a non-medical, non-examining lay opinion, under the regulations."[6] Pl.'s Br. at 6; *see also* Pl.'s Reply at 2 ("Defendant also fails to address why, as required by her regulations, the ALJ did not weigh Dr. Rocha's opinions against Dr. Patel's conclusory affirmation under the regulatory factors at 20 C.F.R. §404.1527(c) and (e)."). As an initial matter,

---

[6] Sunita Patel, MD, is a physician employed by the SSA who upon reconsideration affirmed Plaintiff's initial RFC and disability determination. R. 107-08, 448. This is discussed more fully below.

Plaintiff is correct that examining medical source opinions *generally* deserve more weight than those from a nonexamining physician. *See* 20 C.F.R. §§ 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."), 416.927(c)(1) (same). At the same time, however, the ALJ is to consider whether that examining physician's opinion is supported by and consistent with other medical opinions and signs, and other evidence of record. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4). Moreover, Plaintiff misconstrues that regulatory standard—the ALJ is not required to weigh the various medical opinions *against* each other; rather the ALJ determines the weight of *each* nontreating medical opinion *independently* by applying the regulatory factors. *Cf.* 20 C.F.R. §§ 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."), 416.927(c) (same).

Plaintiff further contends that it was "legal error" for the ALJ to adopt the opinions of the state agency consultants over that of Dr. Rocha. *See* Pl.'s Br. at 6. Plaintiff attempts to support this contention with arguments regarding the qualifications of these consultants and the evidence upon which they based their RFC assessments. Pl.'s Br. at 4-6; Pl.'s Reply at 2-3. Plaintiff argues that "the ALJ failed to address the fact that the State agency reviewer's opinion was not made by a medical professional, but only an agency [SDM] who claimed no medical or professional titles." Pl.'s Br. at 4. It is correct that "'[a]n SDM is not a medical professional of any stripe, and the opinion of an SDM

therefore is entitled to no weight.'"  *See Kempel v. Astrue*, No. 08-4130-JAR, 2010 WL

58910, at *7 (D. Kan. Jan. 4, 2010) (alteration in original) (quoting *Ky v. Astrue*, No. 08-

cv-362-REB, 2009 WL 68760, at *3 (D. Colo. Jan. 8, 2009)).  But the ALJ did not

consider Ms. Adams' assessment in isolation.  While the matter is complicated by the fact

that the ALJ imprecisely refers to the determinations of Ms. Adams and Dr. Patel as the

opinions of "the physicians employed by the State Disability Determination Services," R.

126, the key fact is that Dr. Patel affirmed Ms. Adams' assessment.  Therefore, "the

'opinions' to which the ALJ refers in the decision[] include the medical opinion of an

'acceptable medical source,' and the ALJ's 'error in referring as well to the report of the

non-physician does not require remand.'"  *See Kempel*, 2010 WL 58910, at *8  (quoting

*Zebulske v. Barnhart,* No. 04-49-B-W, 2004 WL 2378854, *2 n.2 (D. Me. Oct. 25,

2004)); *see also Keel v. Colvin*, No. 13-1458-SAC, 2015 WL 1034419, at *6 n.1 (D. Kan.

Mar. 10, 2015) ("Although the decision of an SDM is entitled to no weight as a medical

opinion, a medical consultant may adopt the SDM opinion as his own.  An ALJ does not

err by relying on an opinion affirmed by an acceptable medial source after reviewing the

evidence in the file."); *Thongleuth v. Astrue*, No. CIV-A-10-1101-JWL, 2011 WL

1303374, at *12 (D. Kan. Apr. 4, 2011) ("The court agrees with the Commissioner that

the opinion of the SDM was adopted by the reviewing medical consultant at the

reconsideration level, and thereby became a 'medical opinion' within the meaning of the

Act and the regulations, and must be considered and weighed accordingly.").

    Plaintiff next argues that the ALJ "failed to recognize" that Ms. Adams "reviewed

*only* [Plaintiff's] cervical MRI and Dr. Shah's October 2010 record."  Pl.'s Br. at 4

(emphasis in original). A review of the record, however, reveals that the following evidence was cited as the basis for Ms. Adams' decision:

- Dr. Shah's 3/7/11 exam and review of cervical MRI (R. 98);

- Plaintiff's ADLs (R. 102);

- "all evidence in the file" (R. 104);

- Jacksonville Pain Center report received 3/31/11 [Ex. 2F] (R. 136, 137);

- Mayo Clinic Jacksonville report received 4/6/11 [Ex. 1F] (R. 136, 137);

- Orange Park Medical Center report received 3/31/11 [Ex. 3F] (R. 136, 137); and

- Advanced Family Open MRI Ctr report received 4/8/11 [Ex. 4F] (R. 136, 137).

Thus Plaintiff's argument is unsupported by the record. Similarly, Plaintiff argues that "[w]hile Dr. Patel stated she 'reviewed all the evidence,' it is not clear from her brief statement what 'evidence' Dr. Patel reviewed in 'rubber-stamping' the SDM's RFC assessment." Pl.'s Br. at 4-5. Again, however, a review of the record reveals that Dr. Patel relied upon "the evidence listed in [the] previous notice" (as well as other evidence). *See* R. 156, 157; *see also* R. 448.

In conclusion, the ALJ gave specific, legitimate reasons for the weight he assigned to these various opinions, and it was properly his province to resolve any conflicts in the evidence. *See Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). The undersigned therefore finds the ALJ's decision provides sufficient reasons,

explanations, and evidence for the weight he ascribed to the opinion of Dr. Rocha and to the opinion of Dr. Patel.

### C. Failure to Properly Assess Plaintiff's RFC

For step four of the sequential evaluation, the ALJ must "'assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis.'" *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (quoting 20 C.F.R. § 404.1545(b)); *see also* 20 C.F.R. § 416.945(b). However, the claimant "bears the burden of establishing a prima facie case of disability at steps one through four." *Hackett v. Barnhart,* 395 F.3d 1168, 1171 (10th Cir. 2005). As part of his burden, then, Plaintiff was required to provide evidence of his functional limitations. *See Howard v. Barnhart,* 379 F.3d 945, 948 (10th Cir. 2004) (rejecting lack of substantial evidence argument when plaintiff presenting nothing contradicting an RFC for light work); *see also Maestas v. Colvin*, No. 15-2005, 2015 WL 3939004, at *2 (10th Cir. June 29, 2015).

Plaintiff argues that "[c]ontrary to [Social Security] Ruling 96-8p, the ALJ did not show that he considered Plaintiff's statements or testimony in the record relating to his limitations in sitting, standing, and walking that would prevent him from performing light work." Pl.'s Br. at 7; *see also* Pl.'s Reply at 3-4. Plaintiff further contends that the ALJ "did not point to any evidence in the record that indicated Plaintiff performed the amount of sitting, standing, and walking that was consistent with performing light work on a 'regular and continuing basis.'" Pl.'s Br. at 7-8. As such, Plaintiff's argument is that the ALJ erred by failing to properly assess his RFC and failing to link the RFC findings to

specific evidence, which is, in essence, an argument that the RFC determination is not supported by substantial evidence.

A review of the record reflects that the ALJ properly considered the medical evidence in reaching the RFC determination, including specifically discussing Plaintiff's allegations of functional limitations, and that the RFC is supported by substantial evidence.. Further, the regulations do not require "direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question," and the Tenth Circuit has "'rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category.'" *Chapo v. Astrue*, 682 F.3d 1285, 1288-89 (10th Cir. 2012) (quoting *Howard,* 379 F.3d at 949); *see also Maestas*, 2015 WL 3939004, at *1-2. The undersigned finds that the ALJ's discussion is sufficient to explain the RFC determination.

Plaintiff contends that the ALJ's RFC is not supported by substantial evidence because it does not reflect all of the functional limitations caused by his degenerative disc disease. *See* Pl.'s Br. at 7-8. In so arguing, Plaintiff primarily points to his own subjective reports and testimony regarding the limitations caused by his degenerative disc disease. *See id.* In assessing Plaintiff's RFC, the ALJ noted Plaintiff's reports of difficulty with sitting, standing, and walking. R. 120. The ALJ found the record evidence did not fully support the reported limitations. Plaintiff does not point to any objective evidence that would require a contrary finding. With respect to opinion evidence, the only medical opinion Plaintiff points to in support of his claimed limitations

is that of Dr. Rocha.  Pl.'s Br. at 8; Pl.'s Reply at 3.  But the ALJ found that Dr. Rocha's opinion only warranted "partial weight."  *See* R. 124.

In addition, the ALJ noted that "a review of the record in this case reveals no restrictions recommended by the treating doctor."  R. 126.  The ALJ also cited the opinion of Dr. Patel (and Ms. Adams):

> [T]he [RFC] conclusions reached by the physicians employed by the State Disability Determination Services also support a finding of 'not disabled.' Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case where, as here, there exist a number of other reasons to reach similar conclusions. These physicians concluded that the claimant could perform a restricted range of light work.

R. 126 (citing Exs. 1A and 6F).

Plaintiff has not established any functional limitations that the ALJ failed to include in his RFC determination.  Upon review of the record, the undersigned finds that substantial evidence supports the ALJ's RFC determination.  *See Maestas*, 2015 WL 3939004, at *1-2 (finding RFC analysis was supported by substantial evidence when plaintiff failed to cite anything "specific in the medical records to support his alleged functional limitations" and ALJ had found that plaintiff's "own assessment of his limitations lacked credibility"); *see also Adams v. Colvin*, 553 F. App'x 811, 814-15 (10th Cir. 2014) ("The problem with [claimant's] argument [that the ALJ failed to include any limitations related to his impairment] is that the record indicates no functional limitation as a result of [that impairment]."); *Howard*, 379 F.3d at 948 (rejecting a lack-of-substantial-evidence argument when no evidence or testimony

contradicted the ALJ's conclusion that claimant retained the capacity for light work); *Qualls*, 206 F.3d at 1372 (finding that an ALJ need not account for a limitation belied by the record when setting a claimant's RFC).

### D. Error in Finding Plaintiff Could Perform Other Work

#### 1. Representative Occupations

At step five of the sequential analysis, an ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists in the economy that the claimant can perform. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). The ALJ may consider testimony by a VE regarding the requirements of specific jobs and their availability in the national and regional economies. 20 C.F.R. §§ 404.1566(e), 416.966(e). Here, the ALJ determined that "jobs exist in the national economy" "in significant numbers" "for an individual with [Plaintiff's] age, education, work experience, and [RFC]." R. 127-28; *see* 42 U.S.C. § 423(d)(1)(A) ("'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.");[7] 20 C.F.R. §§ 404.1569a(a) ("If you cannot do your past relevant work, we will use the same [RFC] assessment along with your age, education, and work experience to decide if you can adjust to any other work which exists in the national economy."), 416.969a(a) (same). Relying on the VE's testimony, the ALJ cited the representative occupations of office helper (DOT code 239.567-010) with 3000 jobs in Florida and 140,000 jobs in the

_____

[7] Plaintiff's administrative hearing was held in Florida, where Plaintiff was living at the time. R. 38, 41. As such, the ALJ and VE looked to regional job availability in Florida.

national economy; gate guard (DOT code 372.667-030) with 4000 jobs in Florida and 125,000 jobs in the national economy; and security guard (DOT code 372.667-031) with 3500 jobs in Florida and 250,000 jobs in the national economy. R. 127.

Plaintiff argues that the ALJ erred in relying upon the second and third of these occupations because they are both "semi-skilled" and the record does not support a finding that Plaintiff possessed the skills necessary for those jobs. Pl.'s Br. at 9-10. Defendant does not contest this aspect of Plaintiff's argument. *See* Def.'s Br., Doc. No. 12, at 13 n.6. The ALJ did not find that Plaintiff's past skilled work resulted in transferable skills. The ALJ did find that Plaintiff had "limited education." *See* R. 127. "Limited education" is defined in the regulations to mean "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3). Accordingly, a person with limited education is generally not assumed to be capable of semiskilled work. *See* 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3). The ALJ's step-five analysis is not supported by substantial evidence with respect to the occupations of gate guard and security guard.

Plaintiff further argues that the ALJ's reliance upon the first occupation, office helper, was not supported by substantial evidence because "the ALJ failed to pose a hypothetical question accurately depicting all of Plaintiff's limitations." Pl.'s Br. at 10; *see also* Pl.'s Reply at 6-7. It is well-settled, however, that a hypothetical posed to the VE is sufficient if "it contained all of the limitations found to exist by the ALJ." *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000); *see also Chrismon v. Colvin*, 531 F. App'x

893, 899 (10th Cir. 2013) (citing *Barnett* for the proposition that "the VE must take into account the functional limitations properly *found by the ALJ* on the basis of the record"); *cf. Bean v. Chater,* 77 F.3d 1210, 1214 (10th Cir. 1995) (stating that "[t]he hypothetical question should include all—and only—those impairments borne out by the evidentiary record" and finding ALJ was not required to accept VE's answer to hypothetical question that included limitations "claimed by plaintiff but not accepted by the ALJ as supported by the record"). Here, the ALJ did not accept the hypothetical limitations referenced by Plaintiff, did not include them in his RFC, and, therefore, was not bound by them during his step-five evaluation. In other words, this argument is strictly derivative of the assertion that substantial evidence does not support the ALJ's findings with regard to Plaintiff's RFC. The undersigned has already determined that the ALJ's RFC assessment was proper. Accordingly, the undersigned finds no error in the ALJ's reliance upon the third occupation of office helper.

2. Harmless Error

Where an ALJ has improperly relied on one or more, but not all, of the occupations cited in the ALJ's step-five determination, "the Tenth Circuit has often continued its analysis" and rejected a claimant's argument for remand if the ALJ's findings regarding the remaining occupations support the ALJ's ruling. *See Keyes-Zachary v. Colvin*, No. 13-CV-0638-CVE-FHM, 2015 WL 65528, at *5-6 (N.D. Okla. Jan. 5, 2015) (citing cases).

Here, disregarding the second and third occupations, and considering only the jobs offered by the first cited occupation, there remain to Plaintiff a total of 140,000 jobs in

the national economy. The undersigned accordingly finds that the ALJ's error in relying on the second and third cited occupations of gate guard and security guard was harmless. *See, e.g.*, *Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 794 (10th Cir. 2013) (agreeing that ALJ's failure to include plaintiff's limitation in his RFC or hypothetical to the VE was harmless when one occupation relied upon by the ALJ offered 6000 jobs regionally and 80,000 jobs nationally); *Chrismon*, 531 F. App'x at 899-900 (applying harmless-error analysis and holding that step-five "significant numbers" requirement was met where two occupations cited by the ALJ offered a total of 17,500 jobs regionally and 212,000 jobs nationally); *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (finding ALJ's error in considering certain occupations harmless at step five where properly considered occupations offered a total of 11,000 jobs regionally and 152,000 jobs nationally); *see also Rogers v. Astrue*, 312 F. App'x 138, 141-42 (10th Cir. 2009) (affirming where there was no error as to one occupation identified by ALJ that offered 11,000 jobs in the national economy); *Cochran v. Colvin*, No. CIV-13-1238-F, 2015 WL 1308381, at *8 (W.D. Okla. Mar. 23, 2015) (affirming where there was no error as to two occupations that offered a total of 2935 jobs regionally and 256,000 jobs nationally).[8] In

---

[8] *But see Norris v. Barnhart*, 197 F. App'x 771, 776-77 (10th Cir. 2006) (reversing on other grounds and stating, in connection with occupations totaling approximately 1500 jobs in the regional economy and 200,000 jobs in the national economy, that in light of plaintiff's limitations that could impact her ability to drive long distances to work, upon remand ALJ may need to consider the relevant factors to determine if jobs existed in "significant numbers"); *Surber v. Astrue*, No. CIV-07-616-D, 2008 WL 818694, at *4 (W.D. Okla. Mar. 24, 2008) (finding that, in light of the relevant factors and limitations that could impact plaintiff's ability to drive long distances to work, 550 jobs in Oklahoma did not represent a significant number of jobs).

light of the remaining occupation, there was substantial evidence supporting the ALJ's determination that suitable jobs existed in significant numbers in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1569a(a), 416.969a(a); *see also Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) ("[T]he controlling statutes, federal regulations, and case law all indicate that the proper focus generally must be on jobs in the national, not regional, economy"); *Botello v. Astrue,* 376 F. App'x 847, 850 (10th Cir. 2010) (declining to remand where plaintiff did not challenge that 67,250 nationally available jobs constituted a significant number); *Hill v. Colvin*, No. CIV-13-1232-HE, 2015 WL 1412581, at *7 (W.D. Okla. Mar. 26, 2015) (affirming where ALJ found 47,700 nationally available jobs constituted a significant number).

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by September 25, 2015. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 11th day of September, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE